■ GENTRY T. BEACH et al., Respondents-Appellants/Counterclaim Defendants-Respondents-Appellants, v TOURADJI CAPITAL MANAGEMENT, LP, et al., Appellants-Respondents/Counterclaim Plaintiffs-Appellants-Respondents. TOURADJI CAPITAL MANAGEMENT, LP, et al., Counterclaim Plaintiffs-Appellants-Respondents, v VOLLERO BEACH CAPITAL PARTNERS LLC, et al., Counterclaim Defendants-Respondents-Appellants, et al., Counterclaim Defendant. [42 NYS3d 96]—

Order, Supreme Court, New York County (Anil C. Singh, J.), entered May 7, 2015, which granted in part and denied in part the motion of plaintiffs/counterclaim defendants Gentry T. Beach (Gentry), Robert A. Vollero (Mr. Vollero), and counterclaim defendants Vollero Beach Capital Partners LLC, Vollero Beach Capital Fund, LP, Vollero Beach Associates LLC, and Vollero Beach Capital Offshore, Ltd. (the Vollero Beach Funds) for summary judgment dismissing the counterclaims, unanimously modified, on the law, to (1) deny the motion as to (a) so much of the first counterclaim as alleges that Mr. Vollero breached his fiduciary duty to defendant/counterclaim plaintiff Touradji Capital Management, LP (TCM) by destroying documents and remaining at TCM in an attempt to collect information for use in plaintiffs' lawsuit and to concoct a lawsuit, (b) so much of the first counterclaim as alleges that Gentry breached his fiduciary duty to TCM and counterclaim plaintiff DeepRock Venture Partners, LP (DeepRock) by misrepresenting counterclaim defendant Gary Beach's (Gary) contribution to Playa Oil & Gas LP, conspiring with Gary to steal investor funds from Playa, and withholding information about Madagascar Oil and Gas, Ltd., (c) so much of the first counterclaim as alleges that plaintiffs breached their fiduciary duty to TCM by misappropriating its proprietary research, positions, etc., (d) so much of the second counterclaim as alleges that plaintiffs and Vollero Beach Capital Partners engaged in unfair competition against TCM and defendant/counterclaim plaintiff Paul Touradji (Mr. Touradji) by misrepresenting plaintiffs' track record and misappropriating TCM's proprietary research, etc., (e) so much of the third counterclaim as alleges that plaintiffs stole TCM's proprietary research, etc., (f) the fifth counterclaim, with respect to Gentry's involvement in the statements to Amaranth about TCM and Mr. Touradji, and (g) the sixth counterclaim by TCM against plaintiffs; and (2) grant the motion as to (a) so much of the first counterclaim as is asserted by Mr. Touradji, (b) so much of the first counterclaim as alleges that plaintiffs breached their fiduciary duties when Mr. Vollero spoke to Gentry's counsel, and (c) so much of the seventh counterclaim as is asserted by Mr. Touradji and TCM, and otherwise affirmed, without costs.

The motion court did not have the benefit of our decision on the most recent prior appeal (the prior decision), in which we

concluded that the breach of fiduciary duty counterclaim based on destruction of documents stated a cause of action as against Mr. Vollero but not as against Gentry (142 AD3d 442, 444 [2016]). Thus, the counterclaim should be reinstated as against Mr. Vollero. Our reasoning as to Mr. Vollero's destruction of his notes also applies to the part of the first counterclaim alleging that Mr. Vollero breached his fiduciary duty by remaining at TCM in an attempt to collect and fabricate information for use in plaintiffs' lawsuit against the firm and to concoct a lawsuit against the firm. Thus, that part of the first counterclaim should be reinstated as against Mr. Vollero.

We concluded, in the prior decision, that Mr. Vollero's conversation with Gentry's lawyer, which the referee determined was for his own representation, was privileged and that, in engaging in it, Mr. Vollero did not violate his fiduciary duty to TCM (*id.* at 445). Therefore, the counterclaim based on Mr. Vollero's conversation with Gentry's lawyer should be dismissed.

Other aspects of the prior decision support the order appealed from. For example, we concluded that since plaintiffs' violation of a securities regulation caused their employer (TCM) to incur penalties, it was directly against TCM's interests; we also concluded that the securities regulation counterclaim related back to the complaint (*id.* at 444). Hence, the portion of the fiduciary duty counterclaim based on plaintiffs' violation of a securities regulation was correctly sustained.

In the prior decision, we affirmed the denial of the motion to amend the defamation counterclaim (*id.* at 445). Thus, the operative defamation counterclaim is the original one, which alleged that plaintiffs stated to TCM investors, and other businesses in the financial industry, that TCM " 'broke its word' and breached a supposed contract with them" regarding their compensation. However, the amended counterclaim omitted this allegation, which, on appeal, counterclaim plaintiffs do not address. Hence, the "broke its word" part of the defamation counterclaim was correctly dismissed.

With respect to the part of the defamation counterclaim that deals with Amaranth Advisors LLC, the court erroneously looked at the original pleading, rather than at the evidence submitted on the summary judgment motion (*see e.g. Alvord & Swift v Muller Constr. Co.*, 46 NY2d 276, 280-281 [1978]). Counterclaim plaintiffs submitted evidence that Gary went to Amaranth's office in Greenwich, Connecticut, in June 2009, and at that meeting told Josh Goldstein of Amaranth that TCM "either traded against Amaranth's book or used that informa-

tion to benefit it[self] to the detriment of Amaranth." Gary also gave Goldstein a report by Fortress Global. There is sufficient evidence that Gentry conspired with Gary, as the motion court found in addressing a cause of action not at issue on this appeal (tortious interference with contract). By contrast, there is no evidence that either Mr. Vollero or the Vollero Beach Funds conspired with Gary. Indeed, in the prior decision, we found that "the amended counterclaims lack factual allegations that [Mr.] Vollero induced [former TCM employee Benjamin] Bram to breach his contract with [TCM] or that [Mr.] Vollero conspired with [Gentry] with respect to this deed," and dismissed the new tortious interference counterclaim as against Mr. Vollero (142 AD3d at 443).

Gentry is not entitled, as a matter of law, to judgment dismissing the Amaranth portion of the defamation counterclaim as against him, except to the extent that DeepRock is not a proper plaintiff on this counterclaim (since there is no evidence that defamatory statements were made about it). As to his assertion of the litigation privilege, counterclaim plaintiffs presented evidence that the Beaches duped Amaranth into bringing a sham lawsuit that defamed TCM and Mr. Touradji (*see Flomenhaft v Finkelstein*, 127 AD3d 634, 638 [1st Dept 2015]). Nor did Gentry meet his burden of showing, as he contends, that TCM and Mr. Touradji are involuntary limited public figures (*see Krauss v Globe Intl.*, 251 AD2d 191, 192 [1st Dept 1998]). Of the articles cited by plaintiffs, the few that mention Amaranth at all merely report on its lawsuit, which is insufficient (*see Dameron v Washington Mag., Inc.*, 779 F2d 736, 741 [DC Cir 1985], *cert denied* 476 US 1141 [1986]).[1] Moreover, the dispute between Amaranth and TCM was merely a private one (*see Waldbaum v Fairchild Publs., Inc.*, 627 F2d 1287, 1296 [DC Cir 1980], *cert denied* 449 US 898 [1980]).[2]

Since we are reinstating the defamation counterclaim, the sixth counterclaim (tortious interference with business relationships) should also be reinstated to the extent of allowing TCM (but not the other counterclaim plaintiffs) to assert this claim against plaintiffs (but not against the Vollero Beach Funds). Malice on plaintiffs' part need not be shown, because there is evidence that plaintiffs used improper or illegal means, i.e., defamation (*see Amaranth LLC v J.P. Morgan Chase & Co.*, 71 AD3d 40, 47 [1st Dept 2009], *lv dismissed in part,*

---

**1.** We adopted *Dameron*'s analysis in *Daniel Goldreyer, Ltd. v Dow Jones & Co.* (259 AD2d 353 [1st Dept 1999], *appeal withdrawn* 92 NY2d 1013 [1999]).

**2.** In *Goldreyer*, we also adopted *Waldbaum*'s analysis.

*denied in part* 14 NY3d 736 [2010]). As to injury to TCM's relationship with its clients (*see id.*), Mr. Touradji's affidavit raises an issue of fact as to whether any client ceased doing business with TCM as a result of plaintiffs' remarks. Resolution of the conflict between Mr. Touradji's affidavit and the deposition testimony of David Mooney is for the trier of fact.

Based on *Ashland Mgt. Inc. v Altair Invs. NA, LLC* (14 NY3d 774 [2010]), the court correctly found that the contact list that Mikolaj Sibila sent to Gentry at the latter's request was not a trade secret, and thus correctly dismissed the portion of the second and third counterclaims based on this contact list.

By contrast, *Ashland* does not require dismissal of the part of the second counterclaim based on performance data. In *Ashland,* the relevant performance data was available to the public (59 AD3d 97, 107 [1st Dept 2008], *mod* 14 NY3d 774 [2010]). In this case, Mr. Touradji submitted an affidavit saying that "to the extent that [TCM's] performance data was ever shared with investors or others, [TCM] would only do so when those parties were also subject to confidentiality agreements." Moreover, in *Ashland,* the defendants used the performance data as is in their solicitation materials (59 AD3d at 100). In this case, the unfair competition counterclaim is based on counterclaim defendants' falsely (1) claiming TCM's track record as their own and (2) attributing any negative attributes of that record to Mr. Touradji.

With respect to the part of the second and third counterclaims based on TCM's proprietary research, positions, etc., Mr. Touradji submitted an affidavit identifying the aspect of the files taken by Mr. Vollero that constituted trade secrets. He also said that Mr. Vollero did not engage in any significant trading in the mining and agriculture sectors during his employment with TCM and therefore did not need to take those files to work at home. On this motion for summary judgment, the court erred in accepting movant Mr. Vollero's explanation instead of nonmovant Mr. Touradji's statement. Counterclaim defendants failed to establish prima facie that TCM's proprietary research, etc. was not confidential; parts of Mr. Vollero's deposition testimony, which counterclaim defendants submitted in support of their motion, support counterclaim plaintiffs' position on confidentiality. Hence, the motion for summary dismissal as to this part of the second and third counterclaims must be denied regardless of the sufficiency of the opposition (*see Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853 [1985]). We note in any event that counterclaim plaintiffs submitted evidence that TCM considered its research and positions confidential.

Although the evidence shows that only Mr. Vollero took TCM's proprietary files, there is sufficient evidence to raise a triable issue as to whether Gentry conspired with Mr. Vollero on this point. However, there is no evidence that the Vollero Beach Funds stole any trade secrets or conspired with Mr. Vollero; they were not created until months after Mr. Vollero left TCM. Furthermore, there is no evidence that Mr. Touradji's personal trade secrets (as opposed to TCM's) were stolen. DeepRock is not a proper counterclaim plaintiff, because it is merely a pool of capital; TCM is its investment manager.

However, the second counterclaim is properly brought by Mr. Touradji as well as TCM, since counterclaim plaintiffs maintain that the successful performance numbers for TCM's funds are the result of both Mr. Touradji's and TCM's labor, skill, and experience. The second counterclaim should be reinstated as against Vollero Beach Capital Partners, an investment manager and competitor of TCM, but was correctly dismissed as against the remaining Vollero Beach Funds, which are not TCM competitors.

Although plaintiffs were at-will employees, they could be found to have breached a fiduciary duty to their employer if they "acted directly against the employer's interests" (*Veritas Capital Mgt., L.L.C. v Campbell*, 82 AD3d 529, 530 [1st Dept 2011], *lv dismissed* 17 NY3d 778 [2011]). Plaintiffs do not dispute that they were employed by TCM. As for DeepRock, plaintiffs were listed as its portfolio managers. However, there is no evidence that plaintiffs owed a fiduciary duty to Mr. Touradji personally.

Counterclaim plaintiffs' contention that the court erred in excessively parsing their fiduciary duty claim is unavailing (*see Ashland*, 14 NY3d 774).

In his affidavit in support of the motion, Gentry did not deny making misrepresentations about Gary's contributions to Playa. Hence, he failed to make his prima facie case. There are triable issues of fact as to Gentry's involvement with Playa. By contrast, there is no evidence that Mr. Vollero was involved in making any misrepresentations that induced DeepRock to invest in Playa. Indeed, counterclaim plaintiffs claim only that plaintiffs conspired from 2008 on; DeepRock invested in Playa well before then.

The evidence that Gentry was supposed to revise the Playa agreement and failed to do so does not demonstrate a breach of his duty of loyalty and good faith to his employer (*Cerciello v Admiral Ins. Brokerage Corp.*, 90 AD3d 967, 968 [2d Dept 2011]).

The court erroneously said that Gary's September 5, 2007 emails were sent to several other members of TCM besides Gentry. In fact, they were sent to only one other TCM employee besides Gentry, namely, Chuck Ray. Since Ray was Gentry's close friend and someone whom Gentry had recruited to work at TCM, the fact that Gary sent emails to Ray as well as to Gentry does not negate the possibility that Gentry was scheming to withhold information from TCM. There are triable issues of fact as to whether Gentry was involved with Madagascar Oil.

Plaintiffs contend that the breach of fiduciary duty counterclaim should have been dismissed in its entirety because TCM failed to show that their actions caused it damage. They submitted evidence that investors withdrew from TCM for reasons other than their actions. However, counterclaim defendants' damages are not limited to the loss of investors. For example, under the faithless servant doctrine, TCM could seek to recover the compensation it paid to plaintiffs (*see Feiger v Iral Jewelry*, 41 NY2d 928 [1977]).

We have considered the parties' remaining arguments as to the breach of fiduciary counterclaim and find that the order appealed from should be modified to the extent indicated in the decretal paragraph.

The motion court correctly declined to dismiss the seventh counterclaim insofar as it alleges that Gentry aided and abetted Gary's breach of fiduciary duty. There is evidence that Gentry "knowingly induced" Gary's breach (*Kaufman v Cohen*, 307 AD2d 113, 125 [1st Dept 2003]). Gary himself testified that, one day before Gentry quarreled with Mr. Touradji and left TCM, Gentry told Gary that Gary needed to distribute money from Playa. The proper counterclaim plaintiff is DeepRock, which invested in Playa. Concur—Mazzarelli, J.P., Sweeny, Andrias, Webber and Gesmer, JJ.